DECISION AND JUDGMENT ENTRY
This is an appeal from three judgments of the Huron County Court of Common Pleas. The first judgment on a jury verdict awards appellee, Catherine L. Stark, $18,000 damages for her lost or damaged personal property and finds that appellants, Gary Weimer and Tonya Wilhelm, were not entitled to any damages on their counterclaim. The second judgment awards appellee $2,350 in attorney fees. The third judgment denies appellants' motions for a new trial, remittitur and or judgment notwithstanding the verdict.
On October 3, 1994, Christina Stark, the tenant, and Tonya Wilhelm, the landlord, entered into a one year lease for the rent of an apartment. Pursuant to the lease, the rent was $375. If the rent was not paid by the tenth of each month, appellee was required to pay a $25 late fee. It is undisputed that appellee was frequently late in the payment of her rent and, at times, made only partial payments of rent.
The lease expired on October 3, 1995; however, appellee and her two children stayed as tenants until the end of February 1996. According to appellee, she telephoned Tonya Wilhelm in mid-February and told her that she would be out of the apartment by April 1, 1996.
Appellee did not reside in the apartment after the end of February. Instead, during the month of February, she moved most of the large items, such as furniture, to her new residence and resided there. On March 1, 1996, she had the gas and electric utilities turned off at the apartment and taken out of her name. She also failed to pay any rent for the month of March. Nevertheless, appellee's personal possessions remained in the apartment.
In mid-March, 1996, appellee attempted to retrieve her possessions from the apartment. She discovered that the door was padlocked and called the police. A police officer cut the padlock off the door, and appellee removed some of her personal property. Her remaining property was later removed from the apartment by appellants and placed in storage. Tonya Wilhelm's father, Gary Weimer, had new locks installed on the doors to the apartment at some point in late March.
Tonya Wilhelm testified that, in mid-February 1996, appellee told her that she was "moving out" by March 1, 1996. According to Wilhelm, her father hired someone to clean the apartment and that individual discovered some of appellee's personal property was still there. Wilhelm and Weimer stated that this property was placed in storage and stayed there until August 1997.
In March 1997, Stark filed suit against Weimer and Wilhelm setting forth a claim for $20,300, the alleged value of her personal property, a claim for punitive damages in the amount of $20,000 and a request for attorney fees. Appellee based her claim on two legal theories: (1) a violation of R.C. 5121.04 and (2) conversion. Appellants filed a counterclaim seeking $1,875 in unpaid rent, late charges in the amount of $125, repairs, cleaning and moving fees in the amount of $1,000 and $50 per month in storage fees from March 1996 until such time that appellee reclaimed her personal property.
Testimony at a jury trial revealed that Stark retrieved her property in August 1997. Appellee asserted that most of her property was not returned and that many of the returned items were damaged. Contrary to the argument of appellants' attorney, Stark testified as to the value of each of the missing items (including her jewelry) and damaged items (such as her clothing) and reached a total value of $13,877 for all of the lost, damaged or destroyed property. Testimony related to unpaid rent and late fees owed by Stark to appellants was, at best, confusing. It appears from the evidence offered that appellee was current (to March 1, 1996) in rent payments and owed $75 in late fees.
The jury returned a verdict in favor of Stark on her claim and awarded her $18,000 plus interest. The jury found in favor of appellants on their counterclaim but awarded them $-0- damages, finding that the $375 security deposit retained by Tonya Wilhelm was sufficient compensation for $75 in late fees and the expenses incurred in the cleaning of the apartment.
The court held a separate hearing on appellee's request for attorney fees and decided that, pursuant to R.C. 5321.04 and R.C. 5321.15, appellee was entitled to attorney fees in the amount of $2,350 plus interest.
Appellants filed combined motions for a new trial, a judgment notwithstanding the verdict or, in the alternative, for a remittitur of $13,000. The trial court denied all three of these motions. Appellants appeal and set forth the following assignments of error:
 "I. The trial court erred in failing to vacate and set aside the judgments for plaintiff entered on March 16, 1998 and April 17, 1998 on the grounds of excessive damages.
 "II. The trial court erred in failing to vacate and set aside the judgments for plaintiff entered on March 16, 1998 and April 17, 1998 on the grounds of error in the amount of recovery, where the action was for injury or detention of personal property.
 "III. The trial court erred in failing to amend the judgment entered by granting a remittitur to reduce the judgment to a fair and proper amount.
 "IV. The trial court erred in failing to grant defendants a new trial because the evidence that defendants took possession of plaintiff's property for the purpose of recovering past due rent was insufficient.
 "V. The trial court erred in entering judgment against defendant on the counterclaim after the jury found in favor of defendant on the counterclaim.
 "VI. The court erred in granting plaintiff attorney fees without requiring evidence as to the reasonableness of the fees."
Appellants' Assignments of Error Nos. I, II and IV address the grounds set forth in their motion for a new trial and shall, therefore, be considered together.
Pursuant to Civ.R. 59(A), a new trial may be granted to all or any of the parties and on all or part of the issues upon, among others, the following grounds:
"* * *
 "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
 "(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;
 "(6) The judgment is not sustained by the weight of the evidence; * * *"
The grant or denial of a motion for a new trial pursuant to Civ.R. 59(A) is within the sound discretion of the trial court; therefore, a reviewing court will not disturb such a ruling absent an abuse of discretion. Eagle Am. Ins. Co. v. French
(1996), 111 Ohio App.3d 213, 218. An abuse of discretion is "more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
We shall first address appellants' argument as it relates to Civ.R. 59(A)(6). Appellants contend that insufficient evidence was offered to support a violation of R.C. 5321.15(A), wrongful retention of a tenant's possessions for the purpose of recovering rent payments.
When a motion for a new trial is predicated on the contention that a given judgment is not sustained by the weight of the evidence, the trial court must engage in a limited weighing of the evidence and pass on the credibility of the witnesses to determine whether a manifest injustice has been done, and that the verdict is against the manifest weight of the evidence. Rohde v.Farmer (1970), 23 Ohio St.2d 82, 92; Atkinson v. Internatl.Technegroup, Inc. (1995), 106 Ohio App.3d 349, 358. Here, the court had the testimony of Catherine Stark in which she averred that Wilhelm said she would retain Stark's personal property until she, Stark, paid her late rent. Thus, while Tonya Wilhelm offered conflicting testimony on this issue, the verdict was supported by some competent, credible evidence. See Verbon v. Pennese (1982),7 Ohio App.3d 182, 183.
Next, we will consider whether the trial court abused its discretion in failing to grant appellants' motion for a new trial on the ground that the amount of recovery was too large, see Civ.R. 59(A)(5), or that the amount of damages was excessive, Civ.R. 59(A)(4).
The only argument pertinent to the motion for a new trial in appellants' brief is that the court erred in failing to grant a new trial because the appellee failed to offer sufficient evidence to demonstrate that appellants wrongfully retained appellee's personal property for the purpose of recovering rent payments. Appellants fail to include any argument on any of the other grounds for new trial. Therefore, we elect to disregard these other two grounds. See App.R. 12(A)(2) and App.R. 16(A)(3). Accordingly, the trial court did not abuse its discretion in denying appellants' motion for a new trial, and appellants' Assignments of Error Nos. I, II and IV are found not well-taken.
In Assignment of Error No. III, appellants assert the trial court erred in denying their motion for a remittitur reducing the judgment to a fair and reasonable amount.
Remittitur is a device used by a trial court to reduce excessive jury awards. Larrissey v. Norwalk Truck Lines, Inc.
(1951), 155 Ohio St. 207, paragraph four of the syllabus. Therefore, where there is no evidence that a jury's damage award was influenced by passion or prejudice, but the trial court nonetheless determines that the jury's award is excessive, the trial court may make the acceptance of a remittitur of the award an alternative to its granting of a new trial. Moskovitz v. Mt.Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 653-654, n. 5; Spearmanv. Meyers (1968), 15 Ohio App.2d 9, 11. The court may reduce the verdict to any amount warranted by the evidence. Larrissey v.Norwalk Truck Lines, Inc., 155 Ohio St. at 219; Cox v. OliverMachine Co. (1987), 41 Ohio App.3d 28, 35. A trial court's decision to grant or deny remittitur is subject to reversal only upon a finding that the court abused its discretion. Betz v.Timken Mercy Med. Ctr. (1994), 96 Ohio App.3d 211, 218.
In the case before us, the trial court denied the request for remittitur, finding that "reasonable minds could have valued plaintiff's damages at $18,000." However, Stark herself placed a total value of $13,877 on the lost, damaged or destroyed personal property. The amount in excess of this figure cannot be considered "punitive" damages. Although appellee set forth a conversion claim in her complaint, this case proceeded solely under the theory that appellants violated R.C. 5321.15(B). The court did not instruct the jury on the tort of conversion or the law governing the award of punitive damages; no evidence was offered to warrant an award of punitive damages. O'Neil v.Walburg (1980), 70 Ohio App.2d 30. Consequently, appellee was limited to the compensatory damages, at most, $13,877[1], she could recover under the statute. As a result, the award of $18,000 is excessive and the court's denial of appellants' motion for a remittitur is an abuse of discretion. Appellants' Assignment of Error No. III is found well-taken.
Appellants' Assignment of Error No. V alleges that the trial court erred by entering an incorrect judgment on the jury verdict on their counterclaim. In this regard, the court held:
 "The jury further found that defendants were not entitled to any damages on the counterclaim based upon the security deposit that was held by the defendants and not returned to the plaintiff."
A careful reading of this sentence reveals that, even though the trial court never expressly states that the jury found in favor of appellants on their counterclaim, the finding as to damages indicates that appellants did prevail on this claim. Accordingly, appellants' Assignment of Error No. V is found not well-taken.
In their Assignment of Error No. VI, appellants challenge the trial court's award of attorney fees to appellee. Appellants first argue that the trial court impermissibly amended appellee's complaint so that she could seek attorney fees.
In her complaint, Stark requested attorney fees based on appellants' "forbidden retaliatory conduct." This case was tried and determined pursuant to R.C. Chapter 5321. Thus, while the trial court initially mentioned the wrong section (R.C. 5321.09) of the statute, it corrected its error and determined that appellee was entitled to attorney fees under either R.C. 5321.04
or R.C. 5321.15(C).
Appellant next argues that the trial court misapplied the law in determining the attorney fees awarded to appellee. A tenant's entitlement to an award of attorney fees, pursuant to R.C. 5321.04(B) and/or R.C. 5321.15(C), is within the discretion of the trial court. See Meacham v. Miller (1992), 79 Ohio App.3d 35,42; Thomas v. Papadelis (1984), 16 Ohio App.3d 359, paragraph two of the syllabus. See, also, Lewis v. Romans (1980), 70 Ohio App.2d 7, paragraph one of the syllabus. Such an award must be predicated on a determination of the reasonable value of services rendered, in light of the relevant provisions in DR2-106(B)[2].Meacham v. Miller, at 42. We have thoroughly examined the transcript containing the trial court's hearing on attorney fees and the exhibit containing a list of the services provided by appellee's trial counsel and the charges, $100 per hour, for these services and conclude that the trial court did not abuse its discretion in making the award of $2,350 to appellee. Accordingly, we find appellants' Assignment of Error No. VI not well-taken.
The judgment of the Huron County Court of Common Pleas is affirmed, in part, and reversed, in part. This cause is remanded to the trial court for further proceedings consistent with this judgment. Appellants and appellee are ordered to pay, in equal shares, the costs of this appeal.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Peter M. Handwork, P.J.
 Melvin L. Resnick, J.
 James R. Sherck, J.
CONCUR.
[1] On remand, the court is not bound by this figure or by the remittitur of $13,000 requested by appellants.
[2] DR2-106(B) reads, in material part:
 "* * * Factors to be considered as guides in determining the reasonableness of a fee include the following:
 "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
 "(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
 "(3) The fee customarily charged in the locality for similar legal services.
"(4) The amount involved and the results obtained.
 "(5) The time limitations imposed by the client or by the circumstances.
 "(6) The nature and length of the professional relationship with the client.
 "(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
"(8) Whether the fee is fixed or contingent."