OPINION
On October 10, 1997, Christine M. Schofield filed a complaint in the Franklin County Court of Common Pleas against Beulah Road, Inc. ("Beulah Road") and other named defendants. Ms. Schofield averred that she was injured as a result of a trip and fall on deteriorating steps located on property owned, leased and/or controlled by the defendant(s). The property at issue was an apartment complex at which Ms. Schofield resided. On the evening in question, Ms. Schofield was visiting her mother, Naomi Patterson, who lived in a different apartment in the same complex. After her visit, Ms. Schofield exited her mother's apartment and proceeded to step down off the landing in front of her mother's apartment building. The concrete landing/steps had deteriorated, and Ms. Schofield tripped on a deteriorated portion, causing her to fall and sustain injuries. The landing/steps had been broken for at least several months prior to the incident in question, and both Ms. Schofield and her mother were aware of the condition of the landing/steps. Ms. Schofield's fall occurred during the nighttime, there was no lighting in the area, and it was completely dark outside. The city of Columbus had previously cited Beulah Road with code violations due to the condition of the landing/steps, and Ms. Patterson had complained to Beulah Road about such condition on several occasions prior to the incident.
In her complaint, Ms. Schofield alleged Beulah Road was negligent in failing to warn of the danger posed by the condition of the steps and/or in failing to keep the premises in a reasonably safe condition. A jury trial began on October 13, 1998. After Ms. Schofield rested, Beulah Road moved for a directed verdict, arguing that the condition of the steps was an open and obvious danger of which Ms. Schofield was aware and as such, there was no duty to warn of or protect against such hazard. The trial court indicated that under common law theories of negligence, the open and obvious danger doctrine would preclude recovery. However, the trial court noted that landlords are subject to certain statutory requirements which, if violated, constitute negligence per se. Ms. Schofield argued that Beulah Road had violated R.C. 5321.04 and therefore was negligent as a matter of law. Further, any negligence on Ms. Schofield's part would not preclude recovery but, rather, should be considered under a comparative negligence analysis.
The trial court concluded that the evidence, construed most strongly in favor of Ms. Schofield, could support a finding of statutory violation(s) which would constitute negligence perse. Therefore, the trial court denied Beulah Road's motion for a directed verdict and stated it would instruct the jury on comparative negligence. The jury found Beulah Road was negligent and Ms. Schofield was not and, therefore, returned a verdict in favor of Ms. Schofield and awarded her $46,000. A judgment entry was journalized on October 26, 1998. Beulah Road (hereinafter "appellant") has appealed to this court, assigning the following error for our consideration:
 The Trial Court erred in denying the Motion of the defendant-appellant for a directed verdict, made at the close of presentation of the evidence by plaintiff.
As a preliminary matter, we must address the argument raised by Ms. Schofield (hereinafter "appellee") that appellant failed to renew its motion for a directed verdict at the close of all the evidence and, therefore, waived any error upon appeal. It is a long-standing rule that a motion for a directed verdict which is denied at the close of the plaintiff's evidence must be renewed at the close of all the evidence in order to preserve the error for appeal. Chemical Bank of New York v. Neman (1990), 52 Ohio St.3d 204,206; Helmick v. Republic-Franklin Ins. Co. (1988),39 Ohio St.3d 71, paragraph one of the syllabus. Appellant contends that it did not need to renew its motion for a directed verdict because it did not put on any new evidence after appellee had rested.
The record shows the following occurred at trial. After appellee presented her witnesses, she proceeded to offer certain exhibits. The following exchange then occurred:
THE COURT: Plaintiff rests?
MR. BLUE: Yes, Your Honor.
THE COURT: Any motions, counsel?
 MR. KEENER: Yes, Your Honor. * * * [A]t this point I'm asking for a directed verdict on the issue of liability in the case. * * * (Tr. 162.)
The parties then proceeded to make their arguments on such motion. The trial court denied the motion for a directed verdict. Id. at 175-178. Court then adjourned briefly. When court resumed, the following occurred:
 MR. KEENER: Your honor, we did have one exhibit, Exhibit A, which also is a deposition photograph, Exhibit 4.
THE COURT: Any objection?
MR. BLUE: No, Your Honor.
THE COURT: The Court will admit Defendant's Exhibit A.
MR. KEENER: Thank you.
 THE COURT: Mr. Blue, you resting on behalf of the plaintiff?
MR. BLUE: Yes, Your Honor.
 THE COURT: And does the defense have any evidence to present?
 MR. KEENER: With the admission of that exhibit, number A, into evidence, we have no further evidence. We're satisfied with the evidence that's been presented thus far.
THE COURT: Defense rests?
MR. KEENER: Yes. Id. at 178-179.
The trial court then informed the jury of a stipulation by the parties as to the amount of appellee's medical expenses and lost wages.
Id. at 179-180. Thereafter, closing arguments were made.
Given the above proceedings and the evidence appellant actually offered after the motion was made, we do not find that appellant failed to preserve any error for appeal on the issue of directed verdict. When a defendant puts on evidence after the plaintiff's case-in-chief and after making a motion for a directed verdict, and then the defendant fails to renew the motion, the defendant consents that the issues go to the jury for a decision on the facts; thus, no question of fact or law is left to be determined by the trial court. Helmick at 74, quoting CincinnatiTraction Co. v. Durack (1908), 78 Ohio St. 243, 248. Here, a very technical review of the record would show that appellant made its motion for a directed verdict and soon thereafter offered one photograph which was admitted. This photograph was a fourth photograph taken the same day three other photographs had been taken. (Tr. 16-18, 83-84.) The photograph was identified during cross-examination. It depicted essentially the same scene as the other three photographs — the area which included the landing/steps in question.
The exhibit offered by appellant after he had made his motion for a directed verdict did not add any additional issues to be decided by either the trial court or the jury. Hence, the reasoning behind the requirement that a defendant renew a motion for a directed verdict after all the evidence is submitted is not implicated in this case. In other words, our review of the trial court's ruling on appellant's motion for a directed verdict made at the close of appellee's case is not affected by the fact that one photograph (a photograph that, again, was essentially cumulative evidence) was admitted after the motion for a directed verdict was made. We do note that this case presents an exceptional situation, and our decision is limited to the particular facts of this case. The better practice is to renew the motion for a directed verdict after all the evidence is submitted, no matter how seemingly negligible such evidence may be. However, upon the particular facts presented in the case at bar, we find that appellant did not waive error as to the denial of its motion for a directed verdict.
We now turn to the merits of appellant's appeal. Appellant contends the trial court should have directed a verdict in its favor because the evidence showed the condition of the landing/steps was an open and obvious danger and, therefore, it had no duty to warn of or protect appellee against such danger. Appellee asserts that while the open and obvious danger doctrine may have precluded recovery at common law, appellee's claim alleged statutory violations which constituted negligence per se. Therefore, appellee's knowledge of the danger did not preclude recovery but, rather, went to the issue of comparative negligence. In denying appellant's motion for a directed verdict, the trial court essentially agreed with appellee's argument.
Civ.R. 50(A) (4) sets forth the standard for directing a verdict and states:
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
Neither the weight of the evidence nor the credibility of the witnesses is to be considered in deciding a motion for a directed verdict. Cater v. Cleveland (1998), 83 Ohio St.3d 24,33, citing Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284. What is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. Cater
at 33. The motion must be denied if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions. Id. The ruling on a motion for a directed verdict is subject to a de novo review upon appeal. Titanium Industriesv. S.E.A., Inc. (1997), 118 Ohio App.3d 39, 47-48.
The issue in the case at bar is essentially a legal and not a factual issue. The evidence is clear that appellee was aware of the deteriorating steps. Appellant asserts that a landlord has no duty to warn of or protect against an open and obvious danger. Further, appellant points out that it specifically withdrew its defense of assumption of the risk, a defense that has been merged with contributory negligence and that may be considered in a comparative negligence analysis. Appellant contends comparative negligence is not even reached because it did not have a duty. However, appellee asserts that appellant violated certain statutory duties. The trial court concluded that the open and obvious danger issue goes to comparative negligence when negligence per se is involved. After a careful review of the relevant case law on similar issues, we find that the trial court did not err in denying appellant's motion for a directed verdict because a comparative negligence analysis is applicable and, therefore, the issues were properly left for the jury to determine.
At common law, a landlord was not liable for injuries occurring on his or her premises. Shroades v. Rental Homes
(1981), 68 Ohio St.2d 20, 23. However, there was an exception at common law when, for example, there was a duty imposed by statute.Id. In 1974, the General Assembly enacted R.C. Chapter 5321—the Landlords and Tenants Act. Id. at 21. The act changed the previous common relationship between landlords and tenants. Id. at 21-22. At issue in the case at bar is R.C. 5321.04 which states, in pertinent part:
 (A) A landlord who is a party to a rental agreement shall do all of the following:
 (1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;
 (2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;
 (3) Keep all common areas of the premises in a safe and sanitary condition[.]
In Shroades at 25, the Supreme Court stated that R.C.5321.04 clearly imposes upon landlords a duty to repair. A violation of a statute that sets forth specific duties constitutes negligence per se. Id. More specifically, the Supreme Court has held that in an action for personal injuries to a tenant proximately caused by a violation of a landlord's statutory duty under R.C. 5321.04, the landlord is negligent per se. Anderson v.Ceccardi (1983), 6 Ohio St.3d 110, paragraph two of the syllabus. In addition, it must be shown that the landlord received notice of the defective condition, the landlord knew of the defect, or the tenant had made reasonable but unsuccessful attempts to notify the landlord. Shroades at 25-26. [1]
The Supreme Court in Anderson at 114 emphasized that in addition to negligence per se, proximate cause of the injuries must be established. In Anderson, the tenant had been injured when a portion of the front steps to his home collapsed while he was using them. Id. at 110. The tenant had previously informed the landlord of the unsafe condition of the steps and that they needed to be repaired. Id. The tenant had alternate access to his home by way of other sets of stairs. Id. The trial court granted summary judgment in favor of the landlord, finding the tenant's assumption of the risk barred the tenant's claims. Id. at 110-111.
The Supreme Court stated that the defense of assumption of the risk needed to be reevaluated in light of the comparative negligence statute, R.C. 2315.19. Id. at 113. The Supreme Court held that the defense of assumption of the risk was merged with the defense of contributory negligence, and assumption of the risk was no longer available as an absolute bar to a tenant's claim for recovery when the injuries are proximately caused by a landlord's violation of a statutory duty. Id. at paragraph one of the syllabus and 115. However, as indicated above, appellant in the case at bar specifically withdrew its defense of assumption of the risk and focused on the open and obvious danger doctrine.
The open and obvious danger doctrine was developed in the context of business invitees who were injured on the owner's premises. The doctrine states that an owner or occupier of property owes no duty to warn invitees of open and obvious dangers on the property. Simmers v. Bentley Constr. Co. (1992), 64 Ohio St.3d 642,644, citing Sidle v. Humphrey (1968), 13 Ohio St.2d 45, paragraph one of the syllabus; Paschal v. Rite Aid Pharmacy, Inc.
(1985), 18 Ohio St.3d 203. The rationale behind the doctrine is that the open and obvious nature of the hazard itself serves as a warning. Simmers at 644.
The Supreme Court has extended the open and obvious danger doctrine to the landlord/tenant situation in the context of the removal of ice and snow. In LaCourse v. Fleitz (1986),28 Ohio St.3d 209, syllabus, the Supreme Court held that R.C.5321.04(A) (3) does not impose a duty on landlords to keep common areas of leased premises clear of natural accumulations of ice and snow. As indicated above, R.C. 5321.04(A) (3) imposes a duty upon landlords to keep all common areas in a safe and sanitary condition. In LaCourse, the Supreme Court noted that at common law, a duty of a landlord to clear natural accumulations of ice and snow was never recognized. Id. at 210. Again, the dangers from such are ordinarily so obvious and apparent that a landlord may reasonably expect that a tenant will act to protect himself or herself against such dangers. Id., citing DeAmiches v. Popczun
(1973), 35 Ohio St.2d 180, paragraph one of the syllabus.
As to the application of the open and obvious doctrine to R.C. 5321.04(A) (3), the Supreme Court rejected the argument that R.C. 5321.04(A) (3) imposed a duty upon landlords to remove accumulated ice and snow from common areas. LaCourse at 211. The reasoning behind such rejection was that: liability imposed by statute will not be extended beyond the clear import of the terms of the statute; courts may not presume that the statute was intended to abrogate the common law; and an intention to abrogate or dismantle a long-standing rule of common law must be expressly declared by the legislature or necessarily implied by the language of the statute. Id. at 211. The Supreme Court noted that R.C.5321.04(A) (3) makes no mention of accumulated ice and snow. Id. For the reasons that follow, we find that the open and obvious danger doctrine is not applicable to the case at bar and, therefore, does not bar appellee's claim.
LaCourse is distinguishable. LaCourse involved natural accumulations of ice and snow and, also, R.C. 5321.04(A) (3). In the case at bar, the facts do not involve weather-related conditions but rather a structural defect. R.C. 5321.04(A) (2) is also implicated in the present case, and such provision requires landlords make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition. The cases from the Supreme Court that are more closely on point to the facts herein are Shroades and Anderson. Both involved structural defects to stairs as in the case at bar. As to the duty allegedly imposed, Shroades discussed the duty to repair under R.C. 5321.04(A) (2). Shroades at 26. Specifically, the court in Shroades stated that under R.C. 5321.04(A) (2), the landlord had a duty to make all repairs and do whatever was reasonably necessary to keep the premises in a fit and habitable condition, that the landlord had notice of the defect to the stairs, and that the landlord failed to fulfill these duties in violation the statute. Id. Such violation constituted negligenceper se. Id.
The open and obvious danger doctrine was not specifically addressed in Shroades or Anderson. However, we do not believe this affects the outcome here. As indicated in Simmers,supra, at 644, the open and obvious danger doctrine goes generally to a landowner's duty to warn and protect against open and obvious dangers. See, also, Sidle, supra; Paschal, supra. Here, we are dealing with a different duty — a duty to repair under R.C. 5321.04(A) (2). The Supreme Court in Shroades has specifically held that violation of such statutory duty constituted negligence per se. Indeed, the Supreme Court inShroades found negligence per se for a landlord's failure to repair stairs — the same failure that is alleged in the case at bar.
In Hurst v. Ohio Dept. of Rehab. Corr. (1995), 72 Ohio St.3d 325,327, the Supreme Court stated that where there exists a legislative enactment commanding or prohibiting for the safety of others the doing of a specific act, and there is a violation of such enactment, such violation constitutes negligence per se. Id.
quoting Eisenhuth v. Moneyhon (1954), 161 Ohio St. 367, paragraph three of the syllabus. However, where the duty is defined only in abstract or general terms, leaving to the jury the ascertainment and determination of reasonableness and correctness of acts and conduct under the proven conditions and circumstances, the phrase negligence per se has no application. Id. The Supreme Court inShroades recognized that in order for a violation to constitute negligence per se, there had to be a violation of a specific duty. See Shroades at 25. The Supreme Court then went on to conclude that a failure to repair steps was a violation of R.C.5321.04(A) (2) which, in turn, constituted negligence per se.Id. at 26.
We note that certain cases cited by appellant in support of its argument are also distinguishable. For example, inMcDaniels v. Petrosky (Feb. 5, 1998), Franklin App. No. 97APE08-1027, unreported (1998 Opinions 180), this court addressed the liability of a landlord for an injury caused by a trip and fall on a tree stump. We stated that the landlord was not liable pursuant to R.C. 5321.04(A) (2) because the tenant had not demonstrated the tree stump was a defect. Id. at 184. Further, this court concluded that the open and obvious doctrine precluded recovery under R.C. 5321.04(A) (3). Id. at 184-188. Our discussion focused on cases involving natural conditions such as ice and snow and dead trees. Id. at 185, citing LaCourse,supra; Kueber v. Haas (1988), 47 Ohio App.3d 62.
McDaniels is distinguishable. This court did discuss R.C. 5321.04(A) (2); however, we concluded the tree stump did not constitute a defect. There is no question that the deteriorating landing/steps in the case at bar constituted a defect. As to this court's analysis under R.C. 5321.04(A) (3), again, such went largely to the open and obvious character of naturally occurring conditions. This is not what occurred in the case at bar.
In Hayes v. Murtha, (Oct. 10, 1996), Franklin App. No. 96APE04-512, unreported (1996 Opinions 4102, 4110), this court, citing LaCourse, found that absent a contractual duty, there is no duty imposed on a landlord either at common law or by virtue of R.C. 5321.04(A) (3) to keep common areas free from snow and ice, and a landlord owes a tenant no duty to protect the tenant from those dangers which are ordinarily so obvious and apparent, including those from natural accumulations of ice and snow, that the tenant may reasonably be expected to discover and protect himself or herself against. Hayes involved a tenant slipping and falling on wet grass. Id. at 4103.
Similarly, in Wiggans v. Glock, (Mar. 14, 1997), Montgomery App. No. 15967, unreported, the court of appeals, citing LaCourse, stated an exception to R.C. 5321.04(A) (3) is that a landlord owes no duty to mitigate the danger posed by accumulated ice and snow and may assume the tenant will apprehend the danger and act to ensure his or her own safety. Id. at 8-9.Wiggans involved a trip and fall on grass clippings, and the court of appeals stated that the same reasoning in LaCourse
applied to the case before it — that, like ice and snow, existence of lawn clippings is within the realm of common experience, and a landlord has the right to assume tenants will assume the risk posed by such "natural phenomena" and protect themselves. Id. at 11.
Hayes and Wiggans are distinguishable from the case at bar for essentially the same reasons as stated in our discussion of LaCourse. These cases involved natural or weather-related conditions. A common thread running through the case law on negligence is that owners/occupiers of land are not liable for injuries caused by natural conditions. Natural conditions are not involved in the case at bar. Rather, a structural defect is involved. In addition, the statutory provision addressed inLaCourse, Hayes and Wiggans was R.C. 5321.04(A) (3). Again, R.C.5321.04(A) (2) is implicated in the case at bar, and the Supreme Court in Shroades has specifically addressed this provision in the context of a landlord's duty to repair steps. Shroades andAnderson are more closely on point to the case at bar, and it is these cases that we follow.
A finding of negligence per se equals a finding of duty and breach of such duty. See Pond v. Leslein (1995), 72 Ohio St.3d 50,53. Given that the Supreme Court in Shroades has specifically found that the failure to repair steps (steps known by the landlord and tenant to be in disrepair) constitutes negligence per se under R.C. 5321.04(A) (2), we conclude that the open and obvious doctrine may not operate to somehow dissolve or preclude such duty. Hence, we find that appellant had a duty under R.C. 5321.04(A) (2) to repair the landing/steps. As to the other requirements under Shroades, the evidence shows that appellant had knowledge of the defect. Proximate cause was still an issue, and the trial court properly concluded that the jury should resolve any issues relating to comparative negligence.
Given the above, we find that the trial court did not err in denying appellant's motion for a directed verdict. As a matter of law, the open and obvious danger doctrine did not abrogate appellant's duty under R.C. 5321.04(A) (2) to repair the defective landing/steps and, as to factual issues, reasonable minds could come to different conclusions as to the comparative negligence of the parties. Therefore, a directed verdict in favor of appellant would have been inappropriate. Accordingly, appellant's assignment of error is overruled.
Having overruled appellant's sole assignment of error, the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
PETREE and DESHLER, JJ., concur.
[1] We note that the facts in the present case establish appellee as both a tenant of appellant's and a guest of her mother's. Appellee's status is immaterial to our discussion, however, as a landlord owes the same duty to persons lawfully on the premises that is owed to tenants. See Shump v. FirstContinental-Robinwood Assoc. (1994), 71 Ohio St.3d 414, syllabus.